Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| GUSTAVO ANDRÉS FADHEL CARBALLO<br><br>*Recurrido*<br><br><br>v.<br><br><br>IVELISSE VARGAS SEPÚLVEDA<br><br>*Peticionaria* | KLCE202500602 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm.: CG2023RF00659 (Sala 503)<br><br>Sobre: Custodia-Monoparental o Compartida y otros |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 21 de julio de 2025.

Comparece ante nos, la señora Ivelisse Vargas Sepúlveda (señora Vargas o peticionaria) mediante recurso de *Certiorari* y nos solicita la revisión de la *Orden*[1], emitida el 30 de abril de 2025 y notificada el 1 de mayo de 2025, por el Tribunal de Primera Instancia, Sala Superior de Caguas (TPI o foro recurrido). Mediante el referido dictamen, el TPI atendió la *Moción en Cumplimiento de Orden*[2] de la señora Vargas, en la que presentó unos proyectos de órdenes, los cuales el TPI declaró *No Ha Lugar* por ser sometidos de manera tardía.

Por los fundamentos que expondremos a continuación, **desestimamos** el recurso de epígrafe por **prematuro** y devolvemos el caso al TPI para la continuación de los procedimientos, de acuerdo con lo aquí resuelto.

---

[1] Apéndice 82 del recurso de *Certiorari,* pág. 239.
[2] Apéndice 80 del recurso de *Certiorari,* págs. 186-188.

Número Identificador

RES2025_____

**I.**

El 19 de septiembre de 2023, el señor Gustavo Fadhel Carballo (señor Fadhel o recurrido) presentó una *Demanda*[3] en contra de la señora Vargas sobre relaciones filiales y custodia compartida. En la misma, estableció que mantuvo una relación consensual breve en la cual procrearon al menor AAFV. Durante el tiempo de embarazo, el señor Fadhel alegó que las discusiones con la peticionaria eran recurrentes, por lo que decidió alejarse para evitarlas. Actualmente, las partes no se han podido poner de acuerdo en cuanto a la forma en la que el padre se relacionará con el menor, toda vez que, la madre ha ejercido control absoluto sobre este. Al padre del menor no se le permite relacionarse con su hijo a menos que sea en la residencia de la madre o bajo las condiciones que esta le impone. El recurrido solicitó que se le permitiera relacionarse provisionalmente con el menor al menos un (1) día en la semana y un día (1) durante el fin de semana, todas las semanas.

En respuesta, el 3 de noviembre de 2023, la señora Vargas presentó su *Contestación a Demanda y Reconvención*[4] en la que confirmó que las comunicaciones entre los progenitores eran insostenibles, debido a los maltratos del señor Fadhel. Asimismo, informó que el recurrido abandonó sus obligaciones durante el embarazo y aún, luego de nacido el menor, no cumple con las aportaciones económicas para su sustento. Por tal razón, la peticionaria solicitó que, previo al inicio de los trámites judiciales, se impusiera una pensión alimenticia no menor de tres mil quinientos dólares ($3,500.00) mensuales y una suma de cinco mil dólares ($5,000.00) por concepto de honorarios de abogado. Además, requirió que se suspendieran las relaciones paternofiliales

---

[3] Apéndice 1 del recurso de *Certiorari*, págs. 1-3.
[4] Apéndice 2 del recurso de *Certiorari*, págs. 4-11.

hasta que se realizaran las investigaciones correspondientes y, por seguridad del menor, que las mismas fueran supervisadas.

Posteriormente, el 9 de noviembre de 2023, el señor Fadhel presentó su *Réplica a Reconvención*[5], en la cual reiteró su solicitud para que se establecieran las relaciones paternofiliales provisionalmente, mientras la Unidad Social realizaba el correspondiente informe. El recurrido evidenció cinco (5) pagos dirigidos a la manutención mensual del menor. Además, recalcó que ha intentado relacionarse con el menor, sin embargo, la señora Vargas se opone a ello. En cuanto a los honorarios solicitados por la peticionaria, este se opuso parcialmente, ya que reconoció el derecho de las partes para establecer acciones en cuanto a los alimentos del menor. No obstante, indicó que estos no procedían en cuanto a los asuntos sobre custodia, relaciones filiales y el otorgamiento de la patria potestad a la madre.

Así las cosas, el 17 de noviembre de 2023, el TPI dictó una *Orden*[6] en la que refirió el caso a la Examinadora de Pensiones Alimentarias y ordenó a ambas partes a presentar las Planillas de Información Personal y Económica (PIPE) en un término de quince (15) días.

Conforme a lo ordenado, el 6 de diciembre de 2023, la señora Vargas presentó una *Moción en Cumplimiento de Orden y Sometiendo Planilla de Información Personal y Económica de la Demandada Ivelisse Vargas Sepúlveda*[7]. Al día siguiente, la peticionaria presentó una *Moción Informativa y Solicitando Orden*[8] en donde resaltó que el señor Fadhel no cumplió con la *Orden* del TPI, emitida el 17 de noviembre de 2023[9].

---

[5] Apéndice 3 del recurso de *Certiorari*, págs. 12-21.
[6] Apéndice 4 del recurso de *Certiorari*, pág. 22.
[7] Apéndice 6 del recurso de *Certiorari*, pág. 24.
[8] Apéndice 7 del recurso de *Certiorari*, pág. 25.
[9] **Desde el 2023 el señor Fadhel ha demostrado un patrón de incumplimiento con las órdenes emitidas por el foro recurrido. Es menester advertirle al foro recurrido que:**

A tales fines, el TPI emitió una *Orden sobre PIPE*[10] el 11 de diciembre de 2023, y notificada el 12 de diciembre de 2023, en la que le otorgó al recurrido un término de diez (10) días para que presentara la PIPE. Además, advirtió que su incumplimiento podría conllevar la imposición de sanciones económicas.

Por su parte, el 13 de diciembre de 2023, el señor Fadhel presentó una *Moción Informativa sobre Descubrimiento de Prueba y en Solicitud de Término Adicional para Presentar Planilla de Información Personal y Económica*[11] en la que informó que evaluaría si se acogería a la defensa de capacidad económica.

Sin embargo, el 17 de diciembre de 2023, la señora Vargas presentó una *Réplica a Moción Informativa sobre Descubrimiento de Prueba y en Solicitud de Término Adicional para Presentar Planilla de Información Personal y Económica, Radicada por el Demandante [Entrada Núm. 23], Objeción a Pliego de Interrogatorios Sometido por el Demandante y Solicitud de Orden Protectora*[12]. En síntesis, la señora Vargas objetó todo el descubrimiento de prueba referente a su persona basado en la doctrina de capacidad económica. Además, indicó que ya había sometido su PIPE, en la cual se detallaba la información sobre los gastos del menor.

Así pues, el 19 de diciembre de 2023[13], el TPI emitió una *Orden*[14], en donde ordenó que, conforme a la doctrina de capacidad económica, el descubrimiento de prueba dirigido a la señora Vargas debía limitarse únicamente a los gastos del menor. Por otro lado,

---

**Las advertencias realizadas en una orden o resolución judicial no son meras coletillas añadidas a un escrito o amenazas hechas en el vacío. En cambio, son apercibimientos sobre las consecuencias reales y el proceder que se llevará a cabo de una parte incumplir con estas, por lo que no deben ser ignoradas o tomadas livianamente,** *Katiria's Café, Inc. v. Municipio Autónomo de San Juan,* 2025 TSPR 33.

[10] Apéndice 8 del recurso de *Certiorari*, pág. 27.
[11] Apéndice 10 del recurso de *Certiorari*, págs. 28-30.
[12] Apéndice 11 del recurso de *Certiorari*, págs. 31-35.
[13] Notificada el 20 de diciembre de 2023.
[14] Apéndice 13 del recurso de *Certiorari*, pág. 37.

ordenó al señor Fadhel a someter su PIPE si este no asumía la defensa de capacidad económica.

Luego de varios trámites sobre las relaciones paternofiliales, el 12 de enero de 2024, la señora Vargas presentó *Moción Informativa sobre Contestaciones a Interrogatorio y Producción de Documentos Relacionados a Gastos del Menor*[15] donde indicó que contestó el pliego de interrogatorio y solicitó que el TPI otorgara un término para que el recurrido informara si se acogía a la defensa de capacidad económica. De no hacerlo, la peticionaria indicó que se reservaría su derecho al descubrimiento de prueba sobre los ingresos y bienes del señor Fadhel.

Conforme a lo solicitado por la peticionaria, el 16 de enero de 2024, el TPI emitió una *Orden* en la que concedió un término de diez (10) días para que el recurrido presentara su posición.

Por su parte, el 18 de enero de 2024, el señor Fadhel presentó una *Moción de Relevo de Representación Legal*[16], donde se hizo constar que el recurrido tenía conocimiento sobre los trámites corrientes, los cuales incluían las órdenes del TPI. Ese mismo día, sometió un documento *Asumiendo Co-Representación Legal Solicitud de Vista Mediante Videoconferencia e Informativa*[17].

Así las cosas, el 30 de enero de 2024, la señora Vargas presentó una *Moción Informando Interés de Celebración de Vistas Presenciales y Solicitando Orden sobre Otros Extremos*[18] en donde reiteró que el recurrido no había confirmado si asumiría la capacidad económica. Por lo que, solicitó que se ordenara a que en un término de cinco (5) días, este expusiera su posición sobre la capacidad económica o que en el mismo término proveyera su PIPE, so pena de la imposición de sanciones.

---

[15] Apéndice 14 del recurso de *Certiorari*, págs. 38-39.
[16] Apéndice 16 del recurso de *Certiorari*, págs. 41-42.
[17] Entrada 46 del Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[18] Apéndice 17 del recurso de *Certiorari*, págs. 43-44.

Ese mismo día, el TPI emitió una *Orden*[19] en la que concedió un término de diez (10) días para que el señor Fadhel presentara su PIPE o informara si asumiría capacidad económica, so pena de sanciones económicas.

Ahora bien, el 15 de febrero de 2024, la señora Vargas presentó una *Moción Urgente Solicitado Orden e Imposición de Sanciones y Honorarios de Abogado por Incumplimiento Craso del Demandante Sobre Aspectos de Alimentos*[20] en la que resaltó que, el señor Fadhel incumplió nuevamente las órdenes del TPI. Adujo que, el recurrido había tenido tiempo suficiente para evaluar si poseía la capacidad económica para suplir los gastos del menor. Es por lo anterior que, solicitó al tribunal un periodo de veinticuatro (24) horas para que este informara su determinación sobre acogerse o no a la capacidad económica, o en su defecto, que sometiera su PIPE, así como la imposición del pago de una sanción de cincuenta dólares ($50.00) diarios hasta su cumplimiento. Igualmente, requirió la suma de doscientos cincuenta dólares ($250.00) por concepto de honorarios de abogados.

El 16 de febrero de 2024[21], el TPI emitió una *Orden Mostrar Causa*[22] en donde ordenó al recurrido que, en un término perentorio de cinco (5) días mostrara causa por la cual no debía encontrarlo incurso en desacato e imponer sanciones económicas ascendentes a cincuenta dólares ($50.00) diarios hasta el cumplimiento de la *Orden* del 30 de enero de 2024. Además, le concedió un término perentorio de cinco (5) días para mostrar causa por la cual no se debía imponer honorarios de abogado a favor de la señora Vargas, ascendentes a doscientos cincuenta dólares ($250.00). Por último,

---

[19] Apéndice 19 del recurso de *Certiorari*, págs. 46-47. La *Orden* se notificó el 2 de febrero de 2024. Cabe destacar que, por error o inadvertencia, el TPI ordenó a la parte demanda que presentara la PIPE o informara si asumiría capacidad económica, cuando en realidad, dicha orden va dirigida al señor Fadhel.
[20] Apéndice 20 del recurso de *Certiorari*, págs. 48-49.
[21] Notificada el 20 de febrero de 2024.
[22] Apéndice 21 del recurso de *Certiorari*, págs. 50-52.

advirtió que el incumplimiento de la *Orden* conllevaría la imposición inmediata de las sanciones y honorarios previamente informados, más la imposición de nuevas sanciones económicas a favor del fondo especial del Poder Judicial.

Así pues, el 26 de febrero de 2024, el señor Fadhel presentó una *Moción Sometiendo PIPE*[23], en la que hizo constar que sometió la PIPE y el Formulario de Datos. Al examinar estos anejos, en la PIPE se detalló que se incluía como anejo la Planilla de Contribución sobre Ingresos del año 2022, sin embargo, esta no se encontraba adjunta.

En cuanto al cálculo de la pensión, en la *Minuta*[24] de la vista celebrada el 7 de mayo de 2024, el TPI expresó que tomó en consideración las PIPE que obraban en el expediente y estableció, de manera provisional, que el señor Fadhel realizaría pagos de ochocientos dólares ($800.00) mensuales. Además, refirió el caso a la Examinadora de Pensiones Alimentarias y le ordenó que celebrara una vista en un término no mayor de diez (10) días. De igual manera, en la misma fecha, el foro recurrido emitió *Sentencia*, la cual recoge todas las determinaciones realizadas en la vista. En esta, también se les advirtió a las partes que, el incumplimiento con dicha *Sentencia*, podría conllevar la imposición de sanciones económicas y encontrar incurso en desacato a la parte incumplidora.

El 23 de mayo de 2024, se emitió una *Orden de la Examinadora de Pensiones Alimentarias*[25] en la que se señaló una vista sobre fijación de pensión. Además, se concedió un término de cinco (5) días para presentar las PIPE, los últimos seis (6) talonarios, la W2 del año 2023 y la evidencia sobre los gastos del menor.

---

[23] Apéndice 25 del recurso de *Certiorari*, págs. 57-63.
[24] Apéndice 34 del recurso de *Certiorari*, págs. 72-74.
[25] Apéndice 41 del recurso de *Certiorari*, págs. 84-85.

Posteriormente, el 6 de junio de 2024, la señora Vargas presentó una *Moción Reiterando Solicitud e Interés de Celebración de Vistas Presenciales y Solicitud de Órdenes Relacionadas a Ingresos del Padre Alimentante*[26] en donde mencionó que el señor Fadhel no había descubierto información pertinente sobre sus ingresos, como los ingresos de cinco (5) corporaciones en las cuales figura como dueño y/o sobre los cuales tiene participación e interés, por ser impertinentes. Sobre ello, citó que la Ley Orgánica de la Administración para el Sustento de Menores, Ley Núm. 5 de 30 de diciembre de 1986 (Ley de Asume)[27], define ingresos como:

> [C]ualquier ganancia, beneficio, rendimiento o fruto derivado de sueldos, jornales o compensación por servicios personales, incluyendo la retribución recibida por servicios prestados como funcionario o empleado del Estado Libre Asociado de Puerto Rico; del Gobierno de Estados Unidos de América, el Distrito de Columbia; las Islas Vírgenes de Estados Unidos de América; o cualquier territorio o posesión sujeta a la jurisdicción de Estados Unidos de América, según lo permitan las leyes y reglamentos federales aplicables. Además, de cualquier estado de Estados Unidos de América, o de cualquier subdivisión política de los mismos, o de cualquier agencia o instrumentalidad de cualesquiera de las mencionadas entidades en cualquiera que sea la forma en que se pagaren; o de profesiones, oficios, industrias, negocios, comercio o ventas; o de operaciones en propiedad, bien sea mueble o inmueble, que surjan de la posesión o uso del interés en tal propiedad. Asimismo, contempla los derivados de intereses, rentas, dividendos, beneficios de sociedad, valores o la operación de cualquier negocio explotado con fines de lucro o utilidad; y ganancias, beneficios, rendimientos, fondos, emolumentos o compensación derivados de cualquier procedencia, incluyendo compensaciones como contratista independiente, compensaciones por desempleo, compensaciones por incapacidad, beneficios de retiro y pensiones o cualquier otro pago que reciba un alimentante de cualquier persona natural o jurídica.

Por lo cual, solicitó que el TPI emitiera órdenes a las instituciones financieras, agencias gubernamentales y municipios para que proveyeran documentación y emitieran certificaciones sobre aspectos contributivos, financieros y/o de ingresos, tales como copia de Planillas de Contribuciones sobre Ingresos con todos sus Anejos, Declaración de Volumen de Ingresos, cuentas

---

[26] Apéndice 42 del recurso de *Certiorari*, págs. 87-91.
[27] 8 LPRA sec. 501 (20).

corrientes, cuentas de ahorro, cuentas de reserva, cuentas IRA's, Planes de Retiro e Inversiones, para los últimos (5) años.

El 10 de junio de 2024, el señor Fadhel presentó *Moción en Cumplimiento de Orden*[28] donde sometió los siguientes documentos: (1) PIPE, (2) Formulario 480.6SP correspondiente al año 2023, (3) Pagos ACH Abril y (4) Pagos ACH Mayo. Cabe resaltar que, los documentos de la PIPE son los mismos presentados el 26 de febrero de 2024, por lo que no figura su Planilla correspondiente al año 2022 como anejo.

Consecuentemente, la señora Vargas presentó un escrito intitulado *Al Expediente Judicial*[29] en el cual hizo constar que sometió sus contestaciones al interrogatorio y producción de documentos entregado por el señor Fadhel.

Nuevamente, el 20 de junio de 2024, se emitió una *Orden de la Examinadora de Pensiones Alimentarias*[30] en la que se señaló una vista sobre fijación de pensión. Además, se concedió un término de cinco (5) días para presentar las PIPE, los últimos seis (6) talonarios, la W2 del año 2023 y la evidencia sobre los gastos del menor.

El 12 de agosto de 2024, el señor Fadhel presentó una *Moción en Cumplimiento de Orden Sometiendo Prueba*[31] en la que presentó los siguientes documentos: (1) PIPE enmendada, (2) Formulario 480.6SP de los años 2021 y 2022, (3) Formulario 1040-SS para el año 2023 y (4) Estados de cuenta desde abril de 2023 hasta marzo de 2024. Los anejos incluyeron los documentos presentados por la señora Vargas: PIPE y siete (7) talonarios desde el 1ro de marzo de 2024 hasta el 10 de mayo de 2024. Cabe destacar que, el Formulario 1040-SS del recurrido tenía un estampado de "enviada al IRS: Rechazada".

---

[28] Apéndice 43 del recurso de *Certiorari*, págs. 92-93.
[29] Apéndice 51 del recurso de *Certiorari*, pág. 105.
[30] Apéndice 55 del recurso de *Certiorari*, págs. 109-110.
[31] Apéndice 56 del recurso de *Certiorari*, págs. 112-113.

Luego de varios trámites, el 9 de diciembre de 2024, la señora Vargas presentó *Moción Sometiendo PIPE Actualizada y Evidencia de Gastos e Ingresos*[32]. Además, reiteró que existe controversia sobre los ingresos del señor Fadhel, toda vez que, a pesar de haberse requerido mediante interrogatorio y requerimiento de producción de documentos evidencia de ingresos de (5) compañías de las cuales es dueño, este se había negado a descubrir la misma.

El 26 de febrero de 2025, la señora Vargas presentó una *Extrema Urgente Moción sobre Incumplimientos del Demandante y Solicitud de Órdenes y Remedios*[33], en la que resaltó la inacción del señor Fadhel en proveer la información y documentación requerida referente a sus ingresos, en múltiples ocasiones. Por lo que solicitó que el TPI emitiera las órdenes previamente solicitadas, dirigidas a instituciones financieras, municipios, agencias gubernamentales, entre otras. Además, expuso las gestiones que se habían realizado para coordinar y celebrar una reunión, conforme a la Regla 34 de las Reglas de Procedimiento Civil[34], relacionado a descubrir los ingresos del recurrido y la pensión alimentaria a ser fijada.

Mediante una *Orden*[35] emitida el 26 de febrero de 2025 y notificada el 5 de marzo de 2025, el TPI ordenó a la señora Vargas a presentar los proyectos de órdenes, en un término de cinco (5) días.

Las partes estaban citadas para una vista de fijación de alimentos el 10 de marzo de 2025, la cual fue suspendida debido a la incomparecencia del señor Fadhel. Sometida el *Acta de la Examinadora de Pensiones Alimentarias*, el TPI dictó *Resolución*[36] el 17 de marzo de 2025, en la que le concedió un término de cinco (5) días al señor Fadhel para que justificara su incomparecencia, so pena de sanciones.

---

[32] Apéndice 65 del recurso de *Certiorari*, págs. 132-137.
[33] Apéndice 71 del recurso de *Certiorari*, págs. 154-168.
[34] 32 LPRA Ap. V, R. 34.
[35] Apéndice 72 del recurso de *Certiorari*, pág. 169.
[36] Apéndice 76 del recurso de *Certiorari*, págs. 176-178.

El mismo día, 17 de marzo de 2025, el TPI celebró una Conferencia con Antelación a Juicio. En la *Minuta*[37], se hizo constar que a la señora Vargas se le había concedido hasta el 12 de marzo de 2025 para presentar los proyectos de orden referentes al descubrimiento de prueba. Además, se informó que el señor Fadhel estaba en gestiones para contratar una nueva representación legal. Así, pues, nuevamente, el TPI concedió a la peticionaria un término de cinco (5) días para presentar el proyecto de orden; le concedió al recurrido igual término para informar su nueva representación legal; señaló la Conferencia con Antelación a Juicio para el 22 de mayo de 2025 y advirtió a las partes que debían presentar un informe conjunto, so pena de sanciones.

El 1 de abril de 2025, el señor Fadhel presentó una *Moción en Cumplimiento de Orden Reiterando que Asumimos Representación y Solicitud de Prórroga*[38]. En esta, indicó que el 26 de marzo de 2025 presentó una *Moción Asumiendo Representación Legal y Solicitud de Prórroga*[39] en la cual solicitó un término de veinte (20) días para revisar el expediente y familiarizarse con el mismo.

Por su parte, el 11 de abril de 2025, el TPI emitió una *Orden*[40], en la que indicó que el señor Fadhel debía cumplir con lo ordenado dentro del mismo término ya concedido.

Así las cosas, el 23 de abril de 2025, la señora Vargas presentó una *Moción en Cumplimiento*[41] en donde sometió los proyectos de orden solicitados por el TPI.

Consecuentemente, el 24 de abril de 2025, el señor Fadhel presentó una *Moción en Oposición a Descubrimiento de Prueba y para que se Emitan Órdenes*[42], en la cual alegó que era una persona

---

[37] Apéndice 78 del recurso de Certiorari, págs. 182-184
[38] Apéndice 77 del recurso de *Certiorari*, págs. 179-180.
[39] Apéndice 75 del recurso de *Certiorari*, pág. 175.
[40] Apéndice 79 del recurso de *Certiorari*, pág. 185.
[41] Apéndice 80 del recurso de *Certiorari*, págs. 186-236.
[42] Apéndice 81 del recurso de *Certiorari*, págs. 237-238.

jurídica distinta y separada a las corporaciones y a las LLC. Por ende, la peticionaria estaba impedida de inquirir sobre los ingresos de terceros que no estaban obligados a pagar los alimentos del menor.

Mediante una *Orden*[43] emitida el 30 de abril de 2025 y notificada el 1 de mayo de 2025, el TPI declaró *No Ha Lugar* la *Moción en Cumplimiento* de la peticionaria referente a los proyectos de orden, porque se presentó de manera tardía.

Inconforme, el 17 de mayo de 2025, la señora Vargas presentó una *Moción de Reconsideración*[44], en la que alegó que el TPI no advirtió sobre las consecuencias de no cumplir con los términos concedidos. Señaló, que el recurrido tampoco cumplió la orden que le impuso el tribunal, referente a anunciar su representación legal dentro del término de cinco (5) días; y a pesar de que este anunció su representante legal fuera de término, aun así, el TPI la aceptó. La señora Vargas también detalló cómo el señor Fadhel se negó a producir la información solicitada y a la fecha de la presentación de esta *Reconsideración* no había alegado la defensa de capacidad económica. Asimismo, resaltó que la determinación del TPI en su contra no se comparaba con las múltiples oportunidades que había tenido el señor Fadhel ante sus reiterados incumplimientos. Por lo cual, solicitó que se declarara *Ha Lugar* la *Reconsideración* y se dejara sin efecto la *Orden* que impedía que realizara el descubrimiento de prueba.

Por su lado, el 17 de mayo de 2025, el señor Fadhel presentó su *Oposición a Reconsideración y a que se Autorice Descubrimiento de Prueba y Órdenes contra Terceros*[45] donde, nuevamente, indicó que las corporaciones tenían una personalidad jurídica distinta a la

---

[43] Apéndice 82 del recurso de *Certiorari*, pág. 239.
[44] Apéndice 85 del recurso de *Certiorari*, págs. 243-254.
[45] Apéndice 86 del recurso de *Certiorari*, págs. 255-257.

del padre del menor y que estas no figuran como un alter ego del recurrido. Por lo que solicitó que el descubrimiento de prueba se limitara solamente a sus ingresos.

Así las cosas, el 20 de mayo de 2025[46], el TPI emitió una *Orden*[47], en la cual declaró *No Ha Lugar* la *Reconsideración* por tardía. El foro recurrido indicó que la señora Vargas tenía hasta el 16 de mayo de 2025 para presentar la moción[48].

Luego, el 23 de mayo de 2025, la señora Vargas presentó una *Moción Informativa y en Solicitud de Remedios Sobre Aspectos Relacionados a Vista de Alimentos Señalada*[49], en la que indicó un cambio de patrono, por lo que el talonario tenía poca información. Además, planteó que citó a las siguientes corporaciones: Cuela Coffee Shop, LLC; Cuela Management, LLC; Cuela Stores, LLC; Tres Cafeteros, LLC y G. Fadhell, LLC, por conducto de sus respectivos representantes autorizados, para que comparecieran a prestar declaración a la vista señalada para el 3 de junio de 2025, y produjeran documentos requeridos relacionados a los ingresos, compensaciones, beneficios, etc., que realizan y/o emiten a favor del padre alimentante, y que bajo la Ley de ASUME se consideran y caen bajo la amplia definición de ingresos, a ser considerados en el cómputo a realizarse. Igualmente, advirtió que los planteamientos en la moción no constituían una renuncia a su derecho de revisión y otros remedios disponibles respecto a la *Orden* emitida por el TPI el 1 de mayo de 2025.

El 1 de junio de 2025[50], el TPI dictó una *Orden*[51] en donde le solicitó a la peticionaria que señalara las entradas donde surgían las órdenes y advertencias emitidas al señor Fadhel sobre el

---

[46] Notificada el 21 de mayo de 2025.
[47] Apéndice 87 del recurso de *Certiorari*, pág. 258.
[48] Cabe resaltar que la peticionaria presentó la *Moción de Reconsideración* el 17 de mayo de 2025, a las 12:00:24 AM.
[49] Apéndice 88 del recurso de *Certiorari*, págs. 259-261.
[50] Notificada el 2 de junio de 2025.
[51] Entrada 208 de SUMAC.

cumplimiento del descubrimiento de prueba. Además, el foro recurrido le ordenó a la peticionaria a presentar evidencia de que cumplió con la Regla 34 de las Reglas de Procedimiento Civil, *supra*.

Por su parte, el 2 de junio de 2025, el señor Fadhel presentó una *Moción en Cumplimiento de Orden*[52], en donde sometió los siguientes documentos para ser utilizados en la vista de alimentos: (1) Formulario 480.6SP para los años 2023 y 2024; (2) Comunicados de los empleadores del alimentante y (3) Formulario 1040-SS del año 2023.

Inconforme con el dictamen del TPI, sobre la denegatoria de las órdenes por someterse de manera tardía, el 2 de junio de 2025, la señora Vargas compareció ante este foro mediante escrito de *Certiorari* y planteó el siguiente señalamiento de error:

> Erró el Tribunal de Primera Instancia al denegar la expedición de órdenes como parte del descubrimiento de prueba sobre los ingresos según definidos por la Ley de ASUME, actuando contrario a Derecho; y en violación de los derechos a un debido proceso de ley procesal y sustantivo, en claro menoscabo del derecho de alimentos de un menor de 2 años de edad.

Así las cosas, el 4 de junio de 2025, emitimos una *Resolución*[53] en la que otorgamos al recurrido un término de diez (10) días para expresarse en torno al recurso presentado. Conforme a ello, el 21 de junio de 2025, el señor Fadhel presentó su *Solicitud de Desestimación por Prematuro, en la Alternativa Alegato en Oposición a Expedición de Certiorari*. En síntesis, el recurrido planteó que la peticionaria acudió ante este foro apelativo de manera prematura, toda vez que, el TPI no se ha pronunciado sobre las citaciones a las compañías del recurrido para que comparecieran a la vista de alimentos y produjeran los documentos solicitados. Consecuentemente, arguyó que el TPI emitió una *Orden* en la que solicitó a la peticionaria que expusiera que cumplió con los

---

[52] Entrada 210 de SUMAC.
[53] La Resolución fue notificada el 12 de junio de 2025.

requisitos de la Regla 34 de las Reglas de Procedimiento Civil, *supra*, para este emitir su determinación en cuanto a los incumplimientos con el descubrimiento de prueba. Por lo que no corresponde que este foro intervenga hasta que el TPI disponga sobre lo solicitado por la misma peticionaria.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II.**

**-A-**

El auto de *Certiorari* es un recurso procesal discrecional y extraordinario mediante el cual un tribunal de mayor jerarquía puede rectificar errores jurídicos en el ámbito de la Regla 52.1 de Procedimiento Civil[54] y conforme a los criterios que dispone la Regla 40 del Reglamento del Tribunal de Apelaciones [55] . Nuestro ordenamiento judicial ha establecido que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto[56]. Esta norma de deferencia también aplica a las decisiones discrecionales de los tribunales de instancia. En cuanto a este particular, el Tribunal Supremo de Puerto Rico ha expresado lo siguiente:

> No hemos de interferir con los tribunales de instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que este último (1) actuó con prejuicio o parcialidad, (2) incurrió en un craso abuso de discreción, o (3) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo[57].

En ausencia de tal abuso o de acción prejuiciada, error o parcialidad, no corresponde intervenir con las determinaciones del Tribunal de Primera Instancia[58]. No obstante, la Regla 52.1, *supra*,

---

[54] 32 LPRA Ap. V, R. 52.1.
[55] 4 LPRA Ap. XXII-B, R.40.
[56] *Coop. Seguros Múltiples de P.R. v. Lugo,* 136 DPR 203, 208 (1994).
[57] *Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000).
[58] *García v. Padró,* 165 DPR 324, 334-335 (2005); *Zorniak Air Servs. v. Cessna Aircraft Co.,* 132 DPR 170, 180 (1992).

faculta nuestra intervención en situaciones determinadas por la norma procesal. En específico establece que:

> [...] El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión[59].
> [...]

En armonía con lo anterior, la Regla 40 del Reglamento del Tribunal de Apelaciones[60], para dirigir la activación de nuestra jurisdicción discrecional en estos recursos dispone que para expedir un auto de *Certiorari*, este Tribunal debe tomar en consideración los siguientes criterios:

> A. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos, son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E. Si la etapa del procedimiento en que se encuentra el caso es la más propicia para su consideración.
>
> F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Por lo tanto, para ejercer debidamente nuestra facultad revisora es menester evaluar si, a la luz de los criterios antes

---

[59] 32 LPRA Ap. V, R. 52.1.
[60] 4 LPRA Ap. XXII-B, R. 40.

enumerados, se justifica nuestra intervención, pues distinto al recurso de apelación, este tribunal posee discreción para expedir el auto de *Certiorari*[61]. Por supuesto, esta discreción no opera en el vacío y en ausencia de parámetros que la dirijan[62].

**-B-**

La jurisdicción es el poder o la autoridad que tiene un tribunal para considerar y decidir casos o controversias[63]. Reiteradamente, se ha expresado que los tribunales deben ser celosos guardianes de su jurisdicción y no tienen discreción para asumir jurisdicción donde no la hay[64]. De igual manera, es conocido que la ausencia de jurisdicción no puede ser subsanada por las partes ni por el propio tribunal[65]. Por consiguiente, los asuntos jurisdiccionales son privilegiados y deben resolverse con preferencia a cualquier otro asunto planteado[66]. Cuando un tribunal emite una sentencia sin tener jurisdicción sobre las partes o la materia, su dictamen es uno inexistente o *ultravires*[67]. Por ello, al carecer de jurisdicción o autoridad para considerar un recurso, solo resta declararlo así y desestimar la reclamación sin entrar en los méritos de la controversia[68].

Por otro lado, según se ha definido, un recurso prematuro es uno que se ha presentado con relación a una determinación que está pendiente ante la consideración del tribunal apelado, o sea, que aún no ha sido resuelta[69]. Por tanto, un recurso prematuro carece de eficacia y no produce efectos jurídicos[70]. Un recurso presentado prematura o tardíamente priva insubsanablemente de jurisdicción y autoridad al tribunal ante el cual se recurre para atender el

---

[61] *Feliberty v. Soc. de Gananciales*, 147 DPR 834, 837 (1999).
[62] *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012).
[63] *Pueblo v. Ríos Nieves*, 209 DPR 264, 273 (2022).
[64] *Íd.*
[65] *Pérez Soto v. Cantera Pérez, Inc., et al.*, 188 DPR 98, 105 (2013).
[66] *Carattini v. Collazo Syst. Analysis, Inc.*, 158 DPR 345, 355 (2003).
[67] *Pueblo v. Ríos Nieves, supra,* págs. 273-274.
[68] *Mun. de San Sebastián v. QMC Telecom*, 190 DPR 652, 660 (2014).
[69] *Yumac Home v. Empresas Massó*, 194 DPR 96, 107 (2015).
[70] *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97-98 (2008).

asunto, caso o controversia[71]. Sin embargo, la desestimación de un recurso por prematuro le permite a la parte que recurre volver a presentarlo, una vez el foro apelado resuelve lo que estaba ante su consideración[72].

## III.

En el caso de autos, la señora Vargas arguyó que el TPI erró al denegar la expedición de órdenes como parte del descubrimiento de prueba sobre los ingresos según definidos por la Ley de ASUME, actuando contrario a Derecho; y en violación de los derechos a un debido proceso de ley procesal y sustantivo, en claro menoscabo del derecho de alimentos de un menor de 2 años. Sin embargo, luego de evaluar el expediente ante nuestra consideración, concluimos que estamos impedidos de atender el recurso de epígrafe.

Como adelantamos en la exposición del derecho, las cuestiones relativas a la jurisdicción de un tribunal para atender ciertas controversias se tienen que resolver con preferencia. Por otro lado, según se ha definido, un recurso prematuro es uno que se ha presentado con relación a una determinación que está pendiente ante la consideración del tribunal apelado, o sea, que aún no ha sido resuelta[73]. Por tanto, un recurso prematuro carece de eficacia y no produce efectos jurídicos[74]. Es decir, un recurso prematuro priva insubsanablemente de jurisdicción y autoridad al tribunal ante el cual se recurre para atender el asunto, caso o controversia[75].

Expuesto lo anterior, concluimos que el caso de marras es uno prematuro, toda vez que, el foro recurrido no ha resuelto la *Moción Informativa y en Solicitud de Remedios Sobre Aspectos Relacionados a Vista de Alimentos Señalada* presentada por la peticionaria. En dicha moción, la señora Vargas le notificó al TPI que emitió

---

[71] *Íd.,* pág. 98.
[72] *Yumac Home v. Empresas Massó, supra,* pág. 107.
[73] *Íd.*
[74] *Torres Martínez v. Torres Ghigliotty, supra,* págs. 97-98.
[75] *Íd.,* pág. 98.

citaciones a varias de las compañías en las que opera el recurrido, con el objetivo de descubrir los ingresos de este. Asimismo, al momento existe una *Orden* emitida, donde el foro recurrido le solicitó a la peticionaria que señalara aquellas entradas en donde se encuentran los incumplimientos del recurrido y que evidenciara el cumplimiento con la Regla 34 de Procedimiento Civil, *supra.* Entiéndase, el TPI no ha emitido una orden final en cuanto a este asunto que nos faculte o nos confiera la autoridad para entrar a resolver en sus méritos. Por lo que, resulta evidente, que el recurso de *Certiorari* fue presentado de manera prematura, de modo que carecemos de jurisdicción para atenderlo.

## IV.

Por los fundamentos antes expuestos, los que hacemos formar parte de este dictamen, ***desestimamos*** el recurso de epígrafe por falta de jurisdicción.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones. El Juez Adames Soto concurre sin voto escrito.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones